1

```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MISSOURI
 2                        EASTERN DIVISION


 3


 4    UNITED STATES OF AMERICA,   )
                                  )
 5          Plaintiff,            )
                                  )
 6          v.                    )No. 4:14-CR-00366 HEA
                                  )
 7    OLAJUWON DAVIS,             )
                                  )
 8          Defendant.            )


 9


10                          PLEA HEARING

11            BEFORE THE HONORABLE HENRY E. AUTREY
                   UNITED STATES DISTRICT JUDGE

12

13                         JUNE 2, 2015


14

15    APPEARANCES:

16    For Plaintiff:        Kenneth R. Tihen, Esq.
                            OFFICE OF U.S. ATTORNEY
17                          111 South Tenth Street, 20th Floor
                            St. Louis, MO  63102
18
      For Defendant:        John M. Lynch, Esq.
19                          LAW OFFICES OF JOHN M. LYNCH, LLC
                            7777 Bonhomme Ave., Suite 1200
20                          Clayton, MO  63105

21    REPORTED BY:          ANGELA K. DALEY, CSR, RMR, FCRR, CRR
                            Official Court Reporter
22                          United States District Court
                            111 South Tenth Street, Third Floor
23                          St. Louis, MO  63102
                            (314) 244-7978
24

25       PRODUCED BY COURT REPORTER COMPUTER-AIDED TRANSCRIPTION
```

2

**(PROCEEDINGS STARTED AT 11:25 A.M.)**

**(THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN COURT AND WITH THE DEFENDANT PRESENT.)**

THE COURT:  This is the matter of United States of America versus Olajuwon Davis, also known as Ali, also known as Brother Ali, also known as Olajuwon Akeem Ozreal Raheem Lamar Xavier Ali, case number 4:14-CR-00366 HEA.  Let the record reflect that the matter is now before the Court on notice of change of plea, and the parties in that regard have now provided to the Court a document entitled Guilty Plea Agreement which consists of 25 pages.  Let the record also reflect that the defendant is now present in open court with counsel, Mr. John Lynch; the Government is present through Mr. Ken Tihen.  Mr. Lynch, on behalf of the defendant, are you ready to proceed?

MR. LYNCH:  Yes, Your Honor.

THE COURT:  Mr. Tihen, on behalf of the Government, are you ready to proceed?

MR. TIHEN:  Yes, sir.

THE COURT:  Will you swear in the defendant please.

**(DEFENDANT SWORN BY THE CLERK.)**

THE COURT:  Would you state your name for the record please.

THE DEFENDANT:  Olajuwon Davis.

THE COURT:  And did you hear the statement that I

3

1   just made?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  And is that a true and correct statement

4   of why we are in court today?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  And do you understand in that regard that

7   before I can accept your plea of guilty, there are a series of

8   questions that I have to ask you to be sure your plea is

9   valid, all right?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  So as we go through this process, if I

12   say something and you don't hear me, let me know and I will

13   speak louder.  If I say something and you don't understand me,

14   let me know that as well and I will repeat it or rephrase it.

15   And if you need to speak with your attorney at any time, let

16   me know that and I will give you that opportunity, all right?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  All right.  Also keep in mind that you

19   have taken an oath to answer all these questions truthfully,

20   which means your failure to do so could cause the Government

21   to come back against you with a new indictment for perjury,

22   okay?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Any questions about any of that?

25          THE DEFENDANT:  No, sir.

4

1    THE COURT:  All right.  How old are you, sir?

2    THE DEFENDANT:  Twenty-three years old.

3    THE COURT:  How far in school have you gone?

4    THE DEFENDANT:  I did three years at the University

5 of Missouri-Kansas City.

6    THE COURT:  And what was your major while there?

7    THE DEFENDANT:  Economics.

8    THE COURT:  Do you have any difficulty hearing?

9    THE DEFENDANT:  No, I don't think so.

10    THE COURT:  Do you have any difficulty speaking or

11 understanding English?

12    THE DEFENDANT:  No.

13    THE COURT:  Have you taken any kind of medication

14 before coming to court today that might keep you from

15 understanding what is going on in court today?

16    THE DEFENDANT:  No, sir.

17    THE COURT:  Have you used any alcohol or drugs before

18 coming to court today?

19    THE DEFENDANT:  No, sir.

20    THE COURT:  Have you used any alcohol or drugs within

21 the last 36 hours?

22    THE DEFENDANT:  No, sir.

23    THE COURT:  Have you ever been diagnosed as having or

24 treated for having any type of mental illness or mental

25 disease?

5

1          THE DEFENDANT:  No, sir.

2          THE COURT:  Have you ever used or taken any type of

3   medication that might ordinarily be used to treat mental

4   illness or mental disease?

5          THE DEFENDANT:  No, sir.

6          THE COURT:  How are you feeling today, Mr. Davis?

7          THE DEFENDANT:  I am feeling well, sir.

8          THE COURT:  All right.  In your own words, tell me

9   why you have come to court today.

10          THE DEFENDANT:  Well, I have come to court today to

11   accept responsibility for my mistakes for breaking the law.

12          THE COURT:  All right.  And with respect to the

13   charges that are now pending before you, what do you want to

14   do with those charges?

15          THE DEFENDANT:  Plead guilty, sir.

16          THE COURT:  All right.  Do you know of any reason why

17   the Court should not conclude that your client is competent to

18   proceed at this time, Mr. Lynch?

19          MR. LYNCH:  I do not, Your Honor.

20          THE COURT:  Mr. Tihen?

21          MR. TIHEN:  No, sir.

22          THE COURT:  Let the record then reflect that upon the

23   examination of the defendant and upon inquiry of counsel, the

24   Court concludes that defendant is competent to proceed at this

25   time.  Now, Mr. Davis, have you had enough time to review your

6

1  case with your attorney?

2      THE DEFENDANT:  Yes, I have.

3      THE COURT:  And are you satisfied with the advice

4  that he has given you?

5      THE DEFENDANT:  Yes, I am.

6      THE COURT:  Has he answered all of your questions

7  fully, completely, and to your satisfaction?

8      THE DEFENDANT:  Yes, sir.

9      THE COURT:  Is there anything that you needed to know

10  about your case or that you wanted to know about your case

11  that you are still confused about?

12      THE DEFENDANT:  No.

13      THE COURT:  Is there anything about your case that

14  you still don't understand?

15      THE DEFENDANT:  No, sir.

16      THE COURT:  Were there any witnesses that you wanted

17  your lawyer to contact or that your lawyer should have

18  contacted but did not contact?

19      THE DEFENDANT:  No, not that I know of.

20      THE COURT:  Was there any investigation that you

21  wanted your lawyer to do or that your lawyer should have done

22  but did not do?

23      THE DEFENDANT:  No.

24      THE COURT:  Was there any information that you wanted

25  your attorney to get from the Government regarding your case

7

1    or that your attorney should have received from the Government

2    regarding your case that your lawyer didn't get?

3              THE DEFENDANT:  No.

4              THE COURT:  Was there anything at all that you wanted

5    your lawyer to do for you in this matter that your lawyer has

6    failed to do or refused to do in your behalf?

7              THE DEFENDANT:  No.

8              THE COURT:  Are you fully satisfied with the work

9    that Mr. Lynch has provided for you?

10             THE DEFENDANT:  Yes, I am.

11             THE COURT:  Do you have any complaints against him in

12   any way about any matter as your attorney?

13             THE DEFENDANT:  No.

14             THE COURT:  And do you understand that when you plead

15   guilty here today, it means you are giving up your right to a

16   trial by jury?

17             THE DEFENDANT:  That's right.

18             THE COURT:  You understand that the Constitution and

19   laws of this nation guarantees you the right to have your case

20   decided by a jury of 12 impartial citizens?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  And did you discuss this with your

23   attorney?

24             THE DEFENDANT:  Yes, I did.

25             THE COURT:  And as a result of that discussion, have

8

1   you now concluded that, in fact, what you want to do is give

2   up your right to a trial by jury and plead guilty in this

3   case?

4          THE DEFENDANT:  Yes, I do.

5          THE COURT:  All right.  Do you understand that if you

6   did go to trial, you would be presumed innocent, and it would

7   be the obligation of the Government to prove you guilty beyond

8   a reasonable doubt by competent evidence?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Do you further understand that you would

11  not be required to present any kind of evidence to prove

12  yourself innocent?

13         THE DEFENDANT:  Yes.

14         THE COURT:  You further understand if you were to go

15  to trial in this matter, you would have the right to confront

16  any and all witnesses that the Government might have against

17  you?

18         THE DEFENDANT:  Yes.

19         THE COURT:  And in that regard, you understand that

20  you would then be able to cross-examine those witnesses as

21  they testified in open court, under oath, and in front of a

22  jury?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  Do you further understand that if you

25  wanted to, you could present evidence in your own defense, but

9

1     there is no requirement that you do so?

2            THE DEFENDANT: Yes.

3            THE COURT: Do you also understand that you could

4     object to any and all evidence that the Government might

5     attempt to introduce against you at the trial?

6            THE DEFENDANT: Yes.

7            THE COURT: And do you also understand that if you

8     were to go to trial, you would have the right to testify or

9     not testify; it would be your choice?

10            THE DEFENDANT: Yes.

11            THE COURT: And in that regard, if you decided that

12     you did not want to testify in the case, the fact that you did

13     not testify could not be used against you by anyone for any

14     purpose?

15            THE DEFENDANT: Yes.

16            THE COURT: And do you also understand that if you go

17     forward with your plea of guilty here today and if I accept

18     your plea of guilty, I will enter a judgment finding you

19     guilty beyond a reasonable doubt and I will impose a sentence

20     on some future date?

21            THE DEFENDANT: Yes.

22            THE COURT: And do you understand that whatever

23     sentence I impose is entirely up to me?

24            THE DEFENDANT: Yes, I do.

25            THE COURT: And do you further understand that that

10

1  is true even though you might have some agreement between you

2  and the United States relating to sentencing matters?

3          THE DEFENDANT:  Yes.

4          THE COURT:  All right.  Any questions about any of

5  that?

6          THE DEFENDANT:  No, sir.

7          THE COURT:  All right.  And finally, do you

8  understand that if you go forward with your plea of guilty

9  here today, it means you are giving up your right to not

10  incriminate yourself under the Fifth Amendment of the

11  Constitution because you will have to admit the facts that

12  establish a basis for the crime as well as admit the crime

13  itself?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  And is that what you want to do today?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  In relation then to the charges that

18  bring you here today, have you had the opportunity to review

19  the indictment with your attorney?

20          THE DEFENDANT:  Yes, I have.

21          THE COURT:  And as a result of that review, are you

22  satisfied that you understand everything that's set out in the

23  indictment?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Do you have any questions about anything

11

1  in the indictment?

2          THE DEFENDANT:  No.

3          THE COURT:  Are you also aware of the range of

4  punishment that applies to the charges that are set out in the

5  indictment?

6          THE DEFENDANT:  Yes.

7          THE COURT:  And have you discussed that with your

8  attorney as well?

9          THE DEFENDANT:  Yes, I have.

10          THE COURT:  Any questions about that?

11          THE DEFENDANT:  No.

12          THE COURT:  For the record, Mr. Tihen, what is the

13  range of punishment regarding the charges in this matter?

14          MR. TIHEN:  As to Count One, it's imprisonment of not

15  more than 20 years, a fine of not more than $250,000, or both

16  such imprisonment and fine, and a period of supervised release

17  not to exceed five years.  The crime charged in Count One does

18  carry a mandatory minimum sentence of imprisonment of at least

19  five years.  As to Count Two, it is imprisonment of not more

20  than five years, a fine of not more than $250,000, or both

21  such imprisonment and fine, and a period of supervised release

22  not to exceed five years.  As to Counts Three and Four, it is

23  imprisonment of not more than 20 years, a fine of not more

24  than $250,000, or both imprisonment and fine, and again

25  supervised release not to exceed five years.

12

1          THE COURT:  Did you hear everything that Mr. Tihen

2   just said?

3          THE DEFENDANT:  Yes, I did.

4          THE COURT:  And did any of that come as a surprise to

5   you in any way?

6          THE DEFENDANT:  No.

7          THE COURT:  All right.  Is anyone forcing you to

8   plead guilty today, Mr. Davis?

9          THE DEFENDANT:  No.

10          THE COURT:  Has anyone threatened you in any way in

11   order to compel you to plead guilty?

12          THE DEFENDANT:  No, sir.

13          THE COURT:  Has anyone promised you anything in

14   exchange for your plea of guilty today?

15          THE DEFENDANT:  No, sir.

16          THE COURT:  Has anyone made any threats against any

17   close friends or family members to compel you to plead guilty

18   today?

19          THE DEFENDANT:  No.

20          THE COURT:  Have any of your close friends or family

21   members threatened you or otherwise coerced you into pleading

22   guilty today for some reason?

23          THE DEFENDANT:  No.

24          THE COURT:  Are you then pleading guilty voluntarily

25   and of your own free will because that's what you want to do

13

1  in this matter?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  All right.  Now when we began this

4  proceeding, I made a reference to the Guilty Plea Agreement.

5  The last page of that document, Mr. Davis, shows your name in

6  print with a signature above the printed name.  Is that your

7  signature?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  And prior to signing the document, did

10  you review it in its entirety with your attorney?

11          THE DEFENDANT:  Yes, I did.

12          THE COURT:  As a result of that review, are you

13  satisfied that you understand everything in the plea

14  agreement?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Do you have any questions about anything

17  in the plea agreement?

18          THE DEFENDANT:  No, sir.

19          THE COURT:  All right.  To be sure we all have the

20  same understanding of the document, I'm going to have

21  Mr. Tihen tell us what the substance of the plea agreement is

22  as it relates to the rights and obligations of the parties.

23  When he is finished, I will have some questions for you, and

24  then after that, we will talk about the facts, okay?

25          THE DEFENDANT:  Yes, sir.

14

1          THE COURT:  All right.

2          MR. LYNCH:  To that end, Your Honor, may we approach?

3          THE COURT:  Yes.

4     **(A bench conference Was held on the record and placed under**

5     **seal; after which, the following proceedings continued in open**

6                              **court:)**

7          THE COURT:  Proceed, Mr. Tihen, with the substance of

8     the plea agreement, the rights and obligations of the parties.

9     Anything other than what we have already ...

10         MR. TIHEN:  Well, Judge, basically outlining the plea

11    agreement, it's a Rule 11(c)(1)(C) Federal Rule of Criminal

12    Procedure plea agreement, and Mr. Davis has agreed to plead

13    guilty to Counts One, Two, Three, and Four of the superseding

14    indictment.  The Government agrees that it will bring no

15    further prosecution relative to his involvement in a

16    conspiracy to maliciously damage and destroy by means of an

17    explosive a building, vehicle, or other property used in an

18    activity and affecting interstate commerce as well as a

19    conspiracy to make false and fictitious written statements to

20    a federally licensed firearms dealer, that is Cabela's, Inc.,

21    between September of 2014 and November 21, 2014.  In addition,

22    because this is a Rule 11(c)(1)(C) plea, the parties have

23    agreed that defendant should be sentenced to a term of seven

24    years' imprisonment on each of Counts One, Three, and Four,

25    and five years' imprisonment on Count Two, with all those

15

1   terms to run concurrently.  In consideration for this Rule

2   11(c)(1)(C), the parties have discussed the factors under 18

3   USC Section 3553(a) and based upon all the facts and

4   circumstances believe an aggregate sentence of seven years'

5   imprisonment is an appropriate disposition.

6           THE COURT:  All right.  Thank you.  Mr. Davis, did

7   you hear all those things as stated by Mr. Tihen?

8           THE DEFENDANT:  Yes, I did.

9           THE COURT:  And did any of those things come as a

10  surprise to you just now?

11          THE DEFENDANT:  No, sir.

12          THE COURT:  All right.  Has anyone given you any kind

13  of a prediction or promise regarding what your sentence is

14  going to be from me?

15          THE DEFENDANT:  No, not at all.

16          THE COURT:  And again, you understand that whatever

17  it is, it is entirely up to me?

18          THE DEFENDANT:  I do.

19          THE COURT:  And with that as a backdrop, do you want

20  to proceed with your plea of guilty then?

21          THE DEFENDANT:  Yes, I do.

22          THE COURT:  All right.  Mr. Tihen, tell us then if

23  you would what the evidence would have been if the matter had

24  gone to trial that would establish a factual basis for the

25  charge, the relevant conduct of the defendant, and a basis

16

1    upon which one might conclude defendant guilty beyond a

2    reasonable doubt.

3          MR. TIHEN:  Yes, sir, and the facts are extensive and

4    they are set forth between pages 4 and 15 of our plea

5    agreement.  These facts have been arrived at by the parties

6    and have been reviewed by Mr. Davis as well as Mr. Lynch.  But

7    in summary fashion, August of 2014, Mr. Davis was a frequent

8    protester in Ferguson, Missouri.  It was during that time

9    frame that he met Mr. Baldwin, and they began to express a

10   desire to organize protesters.  They also discussed and

11   planned to purchase firearms for other persons that were

12   involved in these protests.  In October 2014, Mr. Davis

13   indicated to two different convicted felons that he could

14   introduce them to Mr. Baldwin for the purpose of purchasing

15   firearms from Cabela's, Inc. here in the Eastern District of

16   Missouri.

17         On October 16, 2014, Mr. Davis sent via text to

18   Mr. Baldwin's phone the number -- Mr. Davis sent via text to a

19   confidential source Mr. Baldwin's phone number.  On

20   October 21st, the confidential source contacted Mr. Baldwin.

21   He informed Mr. Baldwin that, in fact, he had a felony

22   conviction, and Mr. Baldwin agreed to conduct a straw purchase

23   of a firearm for confidential source number 1.  On

24   October 22nd of 2014, Mr. Davis arranged for himself and

25   confidential source number 2 who was also a convicted felon to

17

1   purchase firearms through Baldwin at Cabela's, Inc. in

2   Hazelwood, Missouri.  Law enforcement officers were conducting

3   a pen register at that time and, in fact, confirmed that

4   contact between Mr. Davis and Mr. Baldwin.  Surveillance

5   officers followed Mr. Davis, Mr. Baldwin, and confidential

6   source number 2 to the Cabela's store.  Inside, Mr. Davis and

7   confidential source 2 showed Mr. Baldwin what firearms they

8   wanted him to purchase for them.  At that point after viewing

9   the price, Mr. Davis indicated he didn't have enough money to

10  pay for the firearm he wanted.  Confidential source provided

11  Mr. Baldwin with $500.  Mr. Baldwin purchased a Smith and

12  Wesson, Model SD9VE, 9mm pistol bearing serial number HFT6619.

13  After the purchase, he did turn that firearm over to the

14  confidential source.  It was during the purchase that Baldwin

15  filled out ATF Form 4473 stating falsely that the firearm was

16  for him and that he was not purchasing it for another person.

17  The firearm is designed to expel a projectile by action of an

18  explosive.

19        During the ride back to Baldwin's residence,

20  Mr. Davis and Mr. Baldwin discussed purchasing black powder

21  from Cabela's to use in making bombs.  On October 31, 2014,

22  Mr. Davis again expressed an interest in bombs.  On

23  November 1, 2014, Mr. Davis and CS1 discussed selling firearms

24  on the streets to generate more profits.  Mr. Davis indicated

25  that they could continue to buy firearms from Brother Brandon,

18

1   who was Mr. Baldwin, and resell them on the streets for a

2   profit.

3           On November 5, Mr. Baldwin spoke to CS2 and told CS2

4   that he, meaning Mr. Baldwin, wanted to build bombs and blow

5   things up.  Mr. Baldwin continued making statements in that

6   regard.  On November 7, 2014, Mr. Davis contacted Mr. Baldwin

7   to see if he was available to purchase a firearm at Cabela's

8   for CS number 1.  Later that same day, CS number 1 and an

9   undercover agent met Mr. Baldwin and travelled to Cabela's.

10  Mr. Baldwin indicated that he could purchase two firearms, two

11  .45 caliber handguns, for $400.  Mr. Baldwin was supplied the

12  $400 and Mr. Baldwin, in fact, made the purchase of two

13  Hi-Point Firearm, Haskell Manufacturing, Inc., Model JHP, .45

14  ACP pistols bearing serial numbers X4263774 and X4263775.

15  Mr. Baldwin during the purchase of these firearms falsely

16  filled out two ATF Form 4473s stating that the firearms were

17  for him when, in fact, they were for another person.  Upon

18  exiting the store, Baldwin supplied the two pistols to CS1,

19  and the CS1 and the undercover agent turned those pistols over

20  and seized them as evidence.  Those pistols are designed to

21  expel a projectile by action of an explosive.

22          On November 8, 2014, CS1 met with Mr. Davis, and

23  during this meeting, CS1 told Mr. Davis that Baldwin had

24  purchased two .45s, to which Mr. Davis responded "good", and

25  Mr. Davis said CS1 should turn around and try and sell them on

19

1   the streets for a profit.  On November 8, CS2 met with

2   Mr. Baldwin and asked Baldwin what type of bombs he wanted.

3   Mr. Baldwin stated "we want two types of bombs," then went on

4   to indicate that he wanted to purchase at least ten, that he

5   needed five for people and two for ATMs and another one for

6   one of them tanks or an armored police vehicle.  CS2 asked

7   Mr. Baldwin if he had to go through and get the approval of

8   Ali, who was Mr. Davis.  Baldwin answered, "Ali is already in

9   on it, he already know my mindset."  Baldwin told CS2 that he

10  wanted to blow up the headquarters and destroy the

11  communications of the police department and wanted to get

12  McCulloch, who is the prosecutor of St. Louis County, Robert

13  P. McCulloch.  Mr. Baldwin also indicated that "we gotta hit

14  the chief, Chief of Ferguson Police Department, Thomas

15  Jackson, Thomas Jackson."

16          On November the 11th, 2014, Mr. Davis informed CS1

17  that he was trying to get a Tech 9, which is a semiautomatic

18  firearm with a 90-round clip, for CS1 to sell on the streets

19  for a profit.  On November 12th, Mr. Baldwin and CS2 met at

20  Baldwin's home where Mr. Baldwin viewed a recording of what

21  appeared to be CS2 detonating a pipe bomb.  The agents had

22  previously set up a controlled explosion and recorded it and

23  that was shown to Mr. Baldwin, who indicated that "we need

24  them, we need them".  They discussed the price and then

25  Baldwin asked if Ali, meaning Mr. Davis, had seen the video.

20

1  Thereafter, CS2 and Mr. Baldwin went to Mr. Davis's residence,

2  and it was during that visit that Mr. Davis watched the same

3  video shown to Mr. Baldwin of CS2 detonating the pipe bomb.

4  Mr. Davis indicated that the pipe bomb was a start, that he

5  needed to get his paper or money together.  Davis did tell CS2

6  to tell the bomb maker that he was interested, and during this

7  time frame, Mr. Baldwin and Davis continued to talk about how

8  to use the bombs.

9       On November 13, 2014, Mr. Davis and CS1 discussed

10 explosives and where to store them.  It was during this

11 meeting that CS number 1 also gave Mr. Davis $200 for his role

12 in introducing CS1 to Baldwin for purposes of the prior straw

13 gun purchase.  On November 14, 2014 -- or November 17, 2014,

14 CS2 met with Mr. Davis.  Davis informed CS2 that he wanted

15 one, meaning pipe bomb, to test it out.  Mr. Davis indicated

16 he wanted instructions on how to use the device.  Mr. Davis

17 also asked if CS2 had any examples of bigger shit, meaning

18 larger bombs.  Mr. Davis indicated to CS2 that the purchase of

19 the pipe bombs was "definitely a go, man, you let me know when

20 I can get it."  Mr. Davis indicated that he would be good to

21 go and could take delivery on Friday, November 21, 2014.

22 Mr. Davis indicated that he wanted CS2 to tell the bomb maker

23 that he needed to make sure it goes boom.  And Mr. Davis

24 indicated, "On that note, we need that" -- meaning the pipe

25 bomb -- "to happen".

21

1          On November the 18th, 2014, CS2 met with Mr. Davis.

2   Mr. Davis said he wanted some, meaning bombs, for cars, and

3   that he also indicated that if the bomb could do a structure,

4   then it could do basically almost anything.  Mr. Davis advised

5   he wanted to be able to detonate the bomb from a distance and

6   he wanted a trigger on the bomb to, quote, you just hit it and

7   boom.  He went on to reiterate that he didn't want to

8   trigger -- or he wanted a trigger and not a fuse.  At this

9   meeting, Mr. Davis gave confidential source number 2 a deposit

10  for one pipe bomb and stated "I need it ASAP, brother.  I need

11  them mother fuckers ASAP."  During that meeting, Mr. Davis

12  used his mobile phone to call Mr. Baldwin to ascertain whether

13  Mr. Baldwin would be free to meet and talk.  Agents had a pen

14  register or looked at toll records and, in fact, confirmed

15  that call.  Later on that same date, CS2 again met with

16  Mr. Davis.  During this meeting, Mr. Davis agreed to buy three

17  bombs and that he would give the down payment and then Friday

18  would come up with the rest of the money.

19          On November 19, 2014, Mr. Baldwin met with CS2.  It

20  was during this time frame that Mr. Baldwin told Mr. Davis

21  that he wouldn't know if he could do something regarding the

22  bomb until at least Friday.  Mr. Davis again reiterated that

23  the deal could be done after midnight on Thursday and into

24  Friday morning.  On November 20, 2014, Mr. Davis and CS2 spoke

25  on the phone.  CS2 indicated to Mr. Davis that he, meaning the

22

1    bomb maker, was in town.  Mr. Davis replied "1:00 a.m.?", and

2    arrangements were made for CS2 to pick up Davis at midnight.

3    It's also during this -- or later call that Mr. Davis was told

4    that Brandon Baldwin was coming along.

5           On late November 20, 2014 and into Friday, November

6    21st of 2014, CS2 and Baldwin drove to Mr. Davis's residence.

7    From there, they drove to a QT gas station where at

8    approximately 1:00 a.m. on the 21st, Mr. Davis withdrew the

9    remainder of the money.  Mr. Davis inquired as to how the

10   bombs would be packaged, and CS2 indicated all he knew was

11   that they would be in the car.  And when they arrived at the

12   location, which was at an industrial park in Hazelwood,

13   Missouri, CS2 and Mr. Davis exited the car.  The confidential

14   source went to an individual who was standing nearby, and that

15   was an undercover agent who was acting as the bomb maker.  CS2

16   took the money that Mr. Davis had given him and gave it to the

17   undercover agent at which point the undercover agent remotely

18   unlocked the SUV that was parked on the lot.  Mr. Davis went

19   to the rear of the SUV and located inside were three inert

20   pipe bombs.  Mr. Davis reached inside the rear of the SUV,

21   collected all three inert pipe bombs, and placed them inside a

22   bag.  At that point, both subjects were arrested.

23          Mr. Davis acknowledges that he conspired to purchase

24   and use explosives to maliciously damage and destroy a

25   building, vehicle, or other property used in an activity

23

1   affecting interstate commerce.  Mr. Davis was advised of his

2   Miranda rights and indicated that he was there to purchase

3   three pipe bombs that he had previously made a down payment

4   and supplied the remainder of the money that night.  That

5   along with the extensive facts set forth in the plea agreement

6   would be the evidence the Government would present at trial.

7           THE COURT:  Thank you, sir.  Mr. Davis, did you hear

8   all those facts stated by Mr. Tihen?

9           THE DEFENDANT:  Yes, sir.

10          THE COURT:  And regarding Count One, are all those

11  facts true and correct?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Do you agree and admit regarding Count

14  One then that you knowingly and intentionally conspired with

15  one or more persons to maliciously damage or destroy or

16  attempt to damage or destroy a building, vehicle, or other

17  real property used in interstate or foreign commerce by means

18  of an explosive?

19          THE DEFENDANT:  Yes.

20          THE COURT:  How do you plead?

21          THE DEFENDANT:  Guilty, sir.

22          THE COURT:  And regarding Count Two, are all those

23  facts true and correct?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Do you then agree and admit regarding

24

1   Count Two as to the aspect of making a false written statement

2   to a federally licensed firearms dealer that you knowingly and

3   intentionally conspired with one or more persons to make a

4   false written statement to a federally licensed firearms

5   dealer?

6            THE DEFENDANT:  Yes.

7            THE COURT:  Do you agree and admit that the false

8   statement was made in connection with the acquisition of a

9   firearm?

10           THE DEFENDANT:  Yes, I do.

11           THE COURT:  And furthermore, that the statement was

12   intended or likely to deceive such firearms dealer with

13   respect to a fact material to the lawfulness of the sale of

14   the firearm to you?

15           THE DEFENDANT:  Yes.

16           THE COURT:  And as to the element or aspect of

17   transferring firearms knowing that the person or persons

18   receiving the firearms had been convicted of a crime

19   punishable by imprisonment for a term exceeding one year, do

20   you agree and admit that you knowingly and intentionally

21   conspired with one or more persons to sell or otherwise

22   dispose of a firearm?

23           THE DEFENDANT:  Yes.

24           THE COURT:  And that you did so to do that to another

25   person who at that time had been convicted of a crime

25

1  punishable by imprisonment for a term exceeding one year?

2  　　　　THE DEFENDANT:  Yes.

3  　　　　THE COURT:  Do you also agree and admit that you at

4  the time of the sale or disposition knew or had reasonable

5  cause to believe that the other person had been convicted of a

6  crime punishable by imprisonment for a term exceeding one

7  year?

8  　　　　THE DEFENDANT:  Yes.

9  　　　　THE COURT:  How do you plead regarding Count Two?

10  　　　　THE DEFENDANT:  Guilty, sir.

11  　　　　THE COURT:  As to Count Three, were all those facts

12  true and correct?

13  　　　　THE DEFENDANT:  Yes.

14  　　　　THE COURT:  Do you then agree and admit regarding

15  Count Three that you knowingly made a false written statement

16  to a federally licensed firearms dealer?

17  　　　　THE DEFENDANT:  Yes.

18  　　　　THE COURT:  Do you also agree and admit that the

19  false statement was made in connection with the acquisition of

20  a firearm?

21  　　　　THE DEFENDANT:  Yes.

22  　　　　THE COURT:  And finally, do you agree and admit that

23  the statement was intended or likely to deceive such firearms

24  dealer with respect to a fact material to the lawfulness of

25  the sale of the firearm to you?

26

```
 1              THE DEFENDANT:  Yes.

 2              THE COURT:  How do you plead regarding Count Three?

 3              THE DEFENDANT:  Guilty.

 4              THE COURT:  And finally regarding Count Four, were

 5    all those facts true and correct?

 6              THE DEFENDANT:  Yes, sir.

 7              THE COURT:  Do you then agree and admit that you

 8    knowingly made a false written statement to a federally

 9    licensed firearms dealer in Count Four?

10              THE DEFENDANT:  Yes.

11              THE COURT:  Do you also agree and admit that the

12    false statement was made in connection with the acquisition of

13    a firearm?

14              THE DEFENDANT:  Yes.

15              THE COURT:  And finally regarding Count Four, do you

16    agree and admit that the statement was intended or likely to

17    deceive such firearms dealer with respect to a fact material

18    to the lawfulness of the sale of the firearm to you?

19              THE DEFENDANT:  Yes, sir.

20              THE COURT:  How do you plead regarding Count Four?

21              THE DEFENDANT:  Guilty, sir.

22              THE COURT:  Mr. Lynch, do you know of any reason why

23    the Court should not accept your client's pleas of guilty in

24    Counts One through Four inclusive?

25              MR. LYNCH:  No, Your Honor.
```

27

```
1            THE COURT:  Mr. Tihen?

2            MR. TIHEN:  No, sir.

3            THE COURT:  Let the record then reflect that the

4    Court will now enter its order and findings that the defendant

5    is entering each plea of guilty knowingly, voluntarily, and of

6    his own free will with full understanding of the nature and

7    consequences of each plea of guilty as to Counts One through

8    Four inclusive; furthermore, that the defendant is entering

9    his plea of guilty and knowingly and voluntarily waiving his

10   rights to a trial by jury and all rights incident thereto as

11   they relate to each count, further finding that the defendant

12   is fully cognizant of the range of punishment applicable to

13   the charges set forth in Counts One through Four inclusive.

14   The Court accepts the defendant's pleas of guilty as to each

15   count and enters its judgment finding the defendant guilty

16   beyond a reasonable doubt as to Count One, guilty beyond a

17   reasonable doubt as to Count Two, guilty beyond a reasonable

18   doubt as to Count Three, and finally guilty beyond a

19   reasonable doubt as to Count Four.  Sentencing will be

20   deferred and a presentence investigation report will be

21   ordered.  Sentencing will, therefore, be set for August 31st

22   at 10:45 in the morning.  Anything else, Mr. Lynch?

23            MR. LYNCH:  No, sir.  Thank you.

24            THE COURT:  Mr. Tihen?

25            MR. TIHEN:  No, Your Honor.
```

28

1          THE COURT:  Thank you.  Mr. Davis, we will see you

2   back on that date at 10:45 in the morning then, all right?

3          THE DEFENDANT:  Yes, sir.  Thank you.

4          THE COURT:  That will conclude this proceeding.

5              **(PROCEEDINGS CONCLUDED AT 11:50 A.M.)**

29

<u>CERTIFICATE</u>

1

2

3      I, Angela K. Daley, Registered Merit Reporter and

4  Certified Realtime Reporter, hereby certify that I am a duly

5  appointed Official Court Reporter of the United States

6  District Court for the Eastern District of Missouri.

7      I further certify that the foregoing is a true and

8  accurate transcript of the proceedings held in the

9  above-entitled case and that said transcript is a true and

10  correct transcription of my stenographic notes.

11      I further certify that this transcript contains

12  pages 1 through 28 inclusive and that this reporter takes no

13  responsibility for missing or damaged pages of this transcript

14  when same transcript is copied by any party other than this

15  reporter.

16      Dated at St. Louis, Missouri, this 9th day of January,

17  2018.

18

19

20      _____

                /S/Angela K. Daley
21              Angela K. Daley, CSR, RMR, FCRR, CRR
                Official Court Reporter
22

23

24

25